**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
**MARTIN D. SINGER, ESQ. (BAR NO. 78166)**
**EVAN N. SPIEGEL, ESQ. (BAR NO. 198071)**
**HENRY L. SELF III, ESQ. (BAR NO. 223153)**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:  (310) 556-3501
Facsimile: (310) 556-3615
E-Mail: mdsinger@lavelysinger.com
        espiegel@lavelysinger.com

Attorneys for Plaintiff
**Quentin Tarantino**


**LEVINE SULLIVAN KOCH & SCHULZ, LLP**
ROBERT PENCHINA (*Admitted Pro Hac Vice*)
    rpenchina@lskslaw.com
321 West 44th Street, Suite 1000
New York, NY 10036
Telephone: (212) 850-6100
Fax: (212) 850-6299

THOMAS CURLEY (*Admitted Pro Hac Vice*)
    tcurley@lskslaw.com
1899 L Street, N.W., Suite 200
Washington, DC 20036
Telephone:  (202) 508-1138
Fax:  (202) 861-8999

**JASSY VICK CAROLAN LLP**
KEVIN L. VICK, Cal. Bar No. 220738
    kvick@jassyvick.com
JEAN-PAUL JASSY, Cal. Bar No. 205513
    jpjassy@jassyvick.com
6605 Hollywood Boulevard, Suite 100
Los Angeles, California 90028
Telephone:  310-870-7048
Fax:  310-870-7010

Attorneys for Defendant
**Gawker Media, LLC**

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **QUENTIN TARANTINO**, an individual;<br><br>  Plaintiff,<br><br>  v. | CASE NO. 14-CV-603-JFW (FFMx)<br>[HON. JOHN F. WALTER]<br><br>**JOINT REPORT OF RULE 26(f)**<br>**CONFERENCE OF COUNSEL** |

| | |
|---|---|
| 1<br>2<br>3<br>4 | **GAWKER MEDIA, LLC**, a/k/a Gawker Media, a Delaware corporation; **DOE-1, a/k/a ANONFILES.com**, an unknown entity/person, and **DOES 2 through 10**, inclusive,<br><br>    Defendants. |

<pre>
                         )   SCHEDULING CONFERENCE
                         )   DATE:       April 14, 2014
                         )   TIME:       8:30 a.m.
                         )   DEPT:       Courtroom 16
                         )               U.S. Courthouse
                         )               312 N. Spring Street
                         )               Los Angeles, CA 90012
                         )
                         )   Other Scheduled Upcoming Hearings:
                         )   Hearing on Def's Motion to Dismiss
                         )   Date:       April 14, 2014
                         )   Time:       1:30 p.m.
                         )
                         )
</pre>

**TO THE COURT AND TO ALL PARTIES HEREIN:**

  Counsel for Plaintiff QUENTIN TARANTINO ("Tarantino" and/or "Plaintiff"), and counsel for Defendant GAWKER MEDIA, LLC ("Gawker" and/or "Defendant") (collectively, the "Parties"), have conducted a meeting on the subjects prescribed by Fed. R. of Civ. Proc., Rule 26(f), by L-R 26-1, and pursuant to the Court's Order setting the Scheduling Conference, and provide the following report:

/ / /

### A. Basis for Subject Matter Jurisdiction

This Court has exclusive subject matter and federal question jurisdiction over this action on the basis of and pursuant to the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*, and pursuant to 28 U.S.C. §§ 1331 and 1338, based on claims for relief for acts of copyright infringement and contributory copyright infringement committed in and/or with an affect in the United States (28 U.S.C. §§ 1331 and 1338(a)).

### B. Chronology of Facts and Statement of Principal Factual Issues in Dispute

#### 1. Plaintiff's Chronology

Plaintiff holds, by authorship, the exclusive copyright in the original unpublished unreleased motion picture screenplay and literary work entitled *The Hateful Eight* (the "Screenplay"). Plaintiff filed with the United States Copyright Office ("USCO") for copyright registration of the Screenplay as a "motion picture screenplay" "literary textual work", said registration completed and effective as of January 23, 2014 at 3:19:26 PM ET -- prior to defendants' alleged infringements.

Plaintiff asserts that this action was necessitated by Gawker's, and the other defendants', copyright infringement by their promotion and dissemination of unauthorized downloadable pdf copies of the leaked unreleased Screenplay.

After Tarantino wrote the Screenplay, he provided it, on a confidential basis, to a total of six Hollywood actors and producers for their consideration of possible parts and production. On or about January 21, 2014, Plaintiff discovered that a copy of his unpublished Screenplay had, without his authorization, been leaked to certain members of the entertainment industry, albeit in a limited manner (*i.e.*, through January 23, Plaintiff contends there were no positive online search engine results for a copy of the script). On January 22, 2014, Gawker posted an article on the "Defamer" section of its Gawker Website (Gawker's "January 22nd Article") about the occurrence of the leaked script and about Plaintiff's public statements on the matter. As no copies were publicly available or locatable online, Plaintiff contends, in Gawker's January 22nd Article, Gawker also solicited its readers to provide it with

1  an unauthorized copy of the Screenplay, stating "if anyone would like to ... leak the
2  script to us, please do so at [email address]." Thereafter, on January 23, 2014 at 4:50
3  PM ET, Gawker posted an article on its Gawker Website (Gawker's "January 23rd
4  Article") with direct URL click-through links for the downloading of a full complete
5  pdf copy of the unpublished registered Screenplay, posted for download on the
6  obscure file upload website AnonFiles.com ("AnonFiles Website"). In its January
7  23rd Article, titled *"Here Is the Leaked Quentin Tarantino Hateful Eight Script"*,
8  Plaintiff contends Gawker directed, encouraged and solicited its readers and the
9  general public with click-through URL links on where and how (i.e., "*Here*") to
10 obtain an unauthorized downloadable pdf copy of the Screenplay. Plaintiff contends
11 that Gawker encouraged Internet users to download and read the Screenplay
12 illegally, with the invitation that the *"document is 146 pages of pure Tarantino.*
13 *Enjoy!*", with the text "146 pages" also a URL click-through link directly to the
14 downloadable copy of the Screenplay. Notwithstanding Plaintiff's repeat demands
15 and DMCA notice for the removal of the posted URL links, Gawker expressly
16 refused to remove the URL links to download the material.

17 Plaintiff contends that Gawker intended to and did directly cause, contribute
18 to, enable, facilitate, aid, abet, induce and/or participate in the infringement of
19 Plaintiff's copyrighted work. Plaintiff alleges that, as Gawker's article linked to the
20 first (and otherwise unknown) incidence of the complete Screenplay posted online,
21 Gawker's article and links became the source for public spread of the leak. Plaintiff
22 alleges that the general public would not have known about or found the complete
23 copy of the Screenplay on the AnonFiles Website if not for Gawker's article post and
24 specific click-through URL links to the otherwise unknown copy of the Screenplay.

25 As a result and in redress, Plaintiff advanced claims for relief for: (1)
26 Copyright Infringement; and (2) Contributory Copyright Infringement.

27 **2. Defendant's Chronology**
28 Defendant contends that, after Tarantino wrote a script titled "The Hateful

1   Eight," he provided it to certain Hollywood actors and producers.  Tarantino claims
2   to have discovered on January 21, 2014 that the script had been "leaked."  That same
3   day, Defendant contends that Tarantino called a reporter at the entertainment website
4   *Deadline Hollywood* and solicited media coverage regarding the leak of his script.
5   According to published reports, Tarantino stated that because of the script's leak he
6   was abandoning the movie project based on "The Hateful Eight" script.  Defendant
7   alleges that according to published reports Tarantino stated he was doing so despite
8   the fact that he does not have an aversion to Internet commentators evaluating his
9   screenplays and, in fact, "like[s] the fact that everyone eventually posts [his scripts],
10  gets [them], and reviews [them] on the net."[1]

   Gawker contends that significant media coverage ensued, including by
12  defendant Gawker, regarding Tarantino's remarks and the circulation of the script.
13  At some point, unknown persons – that Gawker contends are unaffiliated with
14  Gawker – uploaded copies of the "Hateful Eight" script to at least the website
15  anonfiles.com, and then to scribd.com, and possibly other sites.[2]  Gawker published a
16  follow-up report regarding this development that included hyperlinks to the pages on
17  those websites where the script could be found.  Those links soon went dead after
18  those websites apparently disabled the webpages in question.  The links remain dead.

19   Tarantino then filed this lawsuit.  He sued AnonFiles.com (as DOE-1) for
20  copyright infringement, but has not yet served it.  He also sued various Gawker-
21  related entities for contributory copyright infringement because of the hyperlinks to
22  anonfiles.com and scribd.com included within Gawker's news report.  The lone

---

[1] Plaintiff contends that this unauthenticated truncated quote from another media outlet is (without agreeing as to the accuracy of the purported quote) misrepresented and out-of-context by Defendant, as Tarantino was <u>not</u> referring to the posting of or the public getting unfinished, unpublished, unreleased confidential scripts, and of scripts not yet produced as films, but completed published released works.

[2] Despite Tarantino's assertion that the script was not publicly available online until January 23, 2014, Defendant contends that it is possible that the script was, in fact, available online prior.

remaining Gawker-related defendant, Gawker Media, LLC, has filed a motion to dismiss Tarantino's claim based on his failure to state a valid contributory copyright claim and on the independent ground of fair use under 17 U.S.C. § 107.

### 3. Statement of Principal Factual Issues in Dispute

The principal factual issues in dispute include: the circumstances under which Tarantino provided the "Hateful Eight" script to others; who uploaded and/or contributed to the uploading of the script on Anonfiles.com and Scribd.com and/or other websites; what copyright infringement occurred online and who is responsible for any infringement; what damages, if any, Tarantino suffered from the alleged copyright infringement; what value, if any, the script has, including independent of a film adaptation; whether the leak was Tarantino's reason for possibly abandoning (or temporarily shelving) the project to adapt the script into a motion picture.

### C. Statement of Disputed Points of Law & Unusual Legal Issues of the Case

The parties dispute the basis for liability for contributory infringement, whether Plaintiff can state a claim for it, and the basis and calculation of damages. A legal issue also relates to Gawker's assertion of and contention that a "fair use" defense is applicable to a claim for contributory infringement. Additional issues of disputed points of law are set forth in Section "D" hereunder.

### D. Motions - Prior and Pending, Current Status, and Anticipated Motions

**1. Prior Motions:** Defendant Gawker Media Group, Inc., a/k/a Gawker Media, a Cayman Islands corporation ("GMGI"), previously filed a Motion to Dismiss the Complaint pursuant to F.R.C.P., Rule 12(b)(2) (Docket Document 11). GMGI's Motion was rendered moot after the parties entered into a Stipulation of Dismissal of GMGI, without prejudice. Plaintiff reserves the right to seek leave to re-add it should discovery evidence it to be an alter ego of Gawker or otherwise subject to jurisdiction. Gawker reserves the right to oppose such a motion.

**2. Pending Motion:** Defendant Gawker filed a Motion to Dismiss the Complaint pursuant to F.R.C.P., Rule 12(b)(6), which is set for hearing on Monday,

April 14, 2014, at **1:30 p.m.**, the afternoon of the same day the Scheduling Conference is scheduled for **8:30 a.m**.[3]

3. **Anticipated:** Plaintiff and Defendant both anticipate filing Motion(s) for Summary Judgment and/or Partial Summary Judgment. In addition, Plaintiff anticipates the potential necessity of advancing an Ex Parte Application or Motion on Shortened Time, for orders deeming Plaintiff's service of the Summons and Complaint on Defendant DOE-1, a/k/a AnonFiles.com (the "AnonFiles") valid and effective, or, in the alternative, permitting alternative methods of service of process on the currently anonymous foreign AnonFiles defendants, pursuant to Fed.R.Civ.Proc., Rule 4(f)(3), by means of e-mail, and/or for additional time in which to effect service, pursuant to Fed.R.Civ.Proc., Rule 4(m), and, further, for leave to conduct pre-service discovery on third-parties and named defendants related to locating the AnonFiles defendants' physical local, and their true identities.

Gawker objects insofar it is among the "named defendants" upon whom such discovery may be sought through shortened or ex parte application. It otherwise reserves its rights to object depending upon the substance of such applications.

E. **Extent to Which Parties, Claims, or Defenses Are Expected to Be Added or Dismissed, and Proposed Deadline for Amending Pleadings**

Plaintiff intends to substitute Doe defendants for their true identities and may add additional parties depending on what is revealed during the discovery process. One substitution of a Doe defendant relates to the operators of AnonFiles.com. An additional possible substitution of a Doe defendant, pending discovery, relates to Hungarian-based entity "Blogwire Hungary Szellemi Alkotást Hasznosító Korlátolt Felelosségu Társaság" (which translates as Blogwire Hungary Intellectual Property Exploitation LLC) ("Blogwire"), which Plaintiff contends is a "sister" entity of Gawker that is owned by Gawker's parent company GMGI. Blogwire is the

---

[3] The Parties respectfully request that the Court consolidate the two hearings.

registrant of the domain name Gawker.com, and Plaintiff contends it operates Gawker's technology and intellectual property, including related to Gawker.com.

Gawker disputes that this entity would be a proper defendant and/or subject to personal jurisdiction. If/when discovery reveals the need to name additional parties, the Parties may seek leave from the Court, with Parties reserving their right to object.

**F.   Initial Disclosure Compliance -- Fed. R. Civ. P. 26**

The Parties agree that they will make their initial disclosures within 14-days following the Court's issuance of a ruling on Defendant's pending Motion to Dismiss pursuant to 12(b)(6), but no earlier than April 28, 2014.

**G.   Discovery -- Fed. R. Civ. P. 26(f)**

**1.   Status** - With the exception as to possible immediate discovery to locate and identify the Doe-1 AnonFiles defendants, formal discovery shall commence fourteen (14) days following the Court's issuance of a ruling on Defendant's pending Motion to Dismiss pursuant to 12(b)(6), but no earlier than April 28, 2014.

**2.   Scope/Subjects of Discovery** - The Parties anticipate that the subjects on which discovery will be needed include, but may not be limited to (i) matters asserted in the complaint and in the articles and interviews referenced therein, including matters relating to Tarantino's provision of the script to certain actors and producers, interviews Tarantino gave concerning the script's dissemination beyond those individuals, the uploading of the script to the anonfiles.com and scribd.com websites and/or other websites, and the dissemination, if any, of copies of the script via those websites, and Gawker's articles regarding the leaked script, including hyperlinking to the anonfiles.com and scribd.com websites;  (ii) the facts and elements of and giving rise to the claims for copyright infringement, and for contributory infringement; (iii) defendants' affirmative defenses; (iv) damages, the basis of, and calculations thereof; and (v) discovery of Gawker's profits.

**3.   Rule 26(f)(3):  Changes In Discovery Limitations** - The Parties do not anticipate changes at this time, other than as to the initial disclosures and

commencement date, and as to a discovery protective order.

**4.     Rule 26(f)(4):  Additional Discovery Orders -** The Parties believe that they will be able to agree on a form of Protective Order to protect the confidentiality of, and to prohibit the unauthorized use of, any confidential information that may be required to be disclosed during discovery, and to otherwise protect the privacy rights of parties to this action, however, if agreement on a form of Protective Order cannot be reached, it may be necessary for the parties to engage the Court/Magistrate.

**H.     Related Cases or Proceedings** - None.

**I.     Relief Sought**

**1.     Plaintiff's Statement of Relief Sought Pursuant to the Complaint**

As to both the First Claim for Relief (For Violation of Copyright) and the Second Claim for Relief (For Contributory Violation of Copyright), Plaintiff seeks the following relief:  (1) Actual damages and Defendants' profits in an amount exceeding $1,000,000 to be determined at trial; (2) Statutory damages; (3) Punitive and exemplary damages; (4) An injunction, enjoining Defendants, and persons acting in concert with them, from continuing to reproduce, distribute, display, disseminate, transmit, make available for download or otherwise use the Screenplay in any manner in violation of Plaintiff's copyright; (5) Attorneys' fees and costs, pursuant to 17 U.S.C. §§502-505; (6) Interest on the above-requested damages; and (7) For such other additional relief as the Court deems just and proper.

Plaintiff is a multiple Oscar winning and nominated writer and director, and his original screenplays have substantial established value.  The basis on which the amount of damages are calculated is either (i) maximum statutory damages pursuant to the Copyright Act or, (ii) actual damages based on damage to Plaintiff's business and profession, and loss of value of the Screenplay both as a motion picture screenplay and as a published literary work for substantial advances and royalties, and disgorgement based on Gawker's profits.

## 2. Defendant's Contention as to Calculation of Damages if Liability Were Established

Defendant denies liability and therefore denies Plaintiff is entitled to damages. In addition, Defendant intends to seek its attorneys' fees if the prevailing party. If liability were established, however, damages should be calculated pursuant to the relevant provisions in the Copyright Act and authorities applying those provisions. Plaintiff would not be entitled to purported actual damages that are speculative or otherwise improper. Nor would Plaintiff be entitled to punitive damages, which are not available under the Copyright Act and which Plaintiff has disclaimed. Dkt. No. 26 at p. 31. Statutory damages would be limited to the minimum set forth in 17 U.S.C. § 504(c) based on, among other things, Gawker's good-faith belief that its alleged contributory infringement is shielded from liability by the fair use doctrine.

**J.  Certification as to Interested Parties or Persons** - All appearing Parties have filed a Certification as to Interested Parties or Persons.

### 1. Plaintiff's Certification Contents (Restated)

(i) Quentin Tarantino -- Plaintiff;

(ii) Gawker Media, LLC, a Delaware Corporation -- Defendant;

(iii) Gawker Entertainment, LLC, a New York corp. -- Defendant, dismissed, without prejudice, upon evidence it is currently an inactive entity;

(iv) Gawker Media Group, Inc., Cayman Islands entity -- Defendant "GMGI", parent company of Gawker Media, LLC, dismissed, without prejudice, pending further investigation and discovery as to jurisdiction, alter ego and conduct;

(v) DOE-1, a/k/a AnonFiles.com, an unknown entity/person – Def;

(vi) Blogwire Hungary Szellemi Alkotást Hasznosító Korlátolt Felelosségu Társaság -- Additional potential Defendant and Interested Party, as noted above in Section E.

**2.     Defendant's Certification Contents (Restated)**

    (i)     Gawker Media, LLC, Defendant.

    (ii)    Gawker Media Group, Inc. -- parent corporation of Defendant.

    (iii)   American International Group, Inc – insurer of Defendant.

**K.     Proposed Case Management Dates**

The Parties propose the following case management dates (subject to change if the trial date is earlier/later than requested):

a.  <u>Rule 26(a) Initial Report/Disclosures</u>: 14-days following a ruling on Defendant's Motion to Dismiss, but no earlier than April 28, 2014

b.  <u>Date discovery to commence</u>:  14-days following a ruling on Defendant's Motion to Dismiss, but no earlier than April 28, 2014

c.  <u>Deadline to add parties or amend pleadings</u>:  180-days prior to trial date

d.  <u>Date for completion of fact discovery</u>:   120-days prior to the trial date

e.  <u>Last hearing date for fact discovery motions</u>:  90-days prior to trial date

f.  <u>Last date for exchange of expert disclosures (including written expert reports)</u>:  120-days prior to the trial date

g.  <u>Last date for exchange of rebuttal expert disclosures (including written expert reports)</u>:  90-days prior to the trial date

h.  <u>Date for completion of expert discovery</u>:  60-days prior to the trial date

i.  <u>Last hearing date for expert discovery motions</u>:  60-days prior to trial

j.  <u>Last hearing date for dispositive motions</u>:  45-days prior to the trial date

**L.     Proposed Pre-Trial Conference and Trial Dates**

In order to provide the Parties the time necessary to engage in discovery and advance any dispositive motions, and based on current case and calendar commitments, the parties propose the following dates:

a.  <u>Pre-Trial Conf. Date</u>:     10-Court-Days prior to the trial date

b.  <u>Trial Date</u>:               March 2015

M. **Trial Estimate - Jury Trial** - Trial by jury. Parties expect a trial would last 4-7 court days, in addition to time for the jury selection process for a trial by jury.

N. **Settlement** - The Parties have not yet engaged in settlement discussions. No discussions are anticipated prior to a ruling on defendant's Motion to Dismiss, and thereafter, no discussions are anticipated prior to completion of initial written discovery and oral depositions. The parties propose to participate in the mandatory "ADR Procedure No. 1," before the assigned Magistrate, with a proposed date of no sooner than 180-days following the commencement of discovery and no later than 45-days before the Pre-Trial Conference.

O. **Complex Case** - The Parties do not believe this is a complex case.

P. **Dispositive Motions** - The Parties anticipate filing motions for summary judgment and/or partial summary judgment on one or more of the primary claims asserted in this action. Following discovery, the Parties will be better able to determine the exact issues on which these motions will or may be directed.

Respectfully Submitted,

DATED: April 1, 2014

MARTIN D. SINGER
EVAN N. SPIEGEL
HENRY L. SELF, III
LAVELY & SINGER
PROFESSIONAL CORPORATION

By: ___/s/ Evan Spiegel___
    EVAN N. SPIEGEL
Attorneys for Plaintiff
    QUENTIN TARANTINO

DATED: April 1, 2014

LEVINE SULLIVAN KOCH & SCHULZ, LLP
ROBERT PENCHINA (admitted pro hac vice)
THOMAS CURLEY (admitted pro hac vice)

JASSY VICK CAROLAN LLP
KEVIN L. VICK
JEAN-PAUL JASSY

By: ___/s/ Robert Penchina___
    ROBERT PENCHINA
Attorneys for Defendants
    GAWKER MEDIA, LLC