1  MARTIN D. SINGER, ESQ. (BAR NO. 78166)
   EVAN N. SPIEGEL, ESQ. (BAR NO. 198071)
2  HENRY L. SELF III, ESQ. (BAR NO. 223153)
   LAVELY & SINGER
3  PROFESSIONAL CORPORATION
   2049 Century Park East, Suite 2400
4  Los Angeles, California 90067-2906
   Telephone:  (310) 556-3501
5  Facsimile: (310) 556-3615
   E-Mail: mdsinger@lavelysinger.com
6          espiegel@lavelysinger.com

7  Attorneys for Plaintiff
   **Quentin Tarantino**

8
                    UNITED STATES DISTRICT COURT
9
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
10
                          WESTERN DIVISION
11

12 | **QUENTIN TARANTINO**, an individual; | ) | **CASE NO. 14-CV-00603-JFW** |
   |                                        | ) | **[HON. JOHN F. WALTER]**    |
13 |                                        | ) |                              |
   |              Plaintiff,                | ) |                              |
14 |                                        | ) | **FIRST AMENDED COMPLAINT FOR:** |
   |       v.                               | ) |                              |
15 |                                        | ) |                              |
   | **GAWKER MEDIA, LLC**, a/k/a           | ) | 1. **COPYRIGHT INFRINGEMENT (DIRECT AND CONTRIBUTORY)** |
16 | Gawker Media, a Delaware corporation,  | ) |                              |
17 |                                        | ) |                              |
   |              Defendant.                | ) |                              |
18 |                                        | ) | *[JURY TRIAL DEMANDED]*      |
19 |                                        | ) |                              |
20

26 / / /

27 / / /

28 / / /

Plaintiff Quentin Tarantino ("Plaintiff" and/or "Tarantino"), alleges:

## THE NATURE OF THIS ACTION

1. This action is necessitated by Gawker's blatant both direct and contributory copyright infringement. Gawker engaged in direct copyright infringement by their unauthorized download of a PDF copy of the leaked unreleased complete screenplay for Quentin Tarantino's motion picture The Hateful Eight (the "Screenplay"). Gawker also engaged in contributory copyright infringement, both by their solicitation for its readers to violate copyright and "leak the script to us," and, after obtaining the unauthorized Screenplay in response to their initial contributory infringement solicitation, by their promotion, aiding and abetting and materially contributing to the dissemination to third-parties of unauthorized downloadable PDF copies of the leaked Screenplay.

2. Gawker has made a business of predatory journalism, violating people's rights to make a buck. This time they went too far. Rather than merely publishing a news story reporting that Plaintiff's screenplay may have been circulating within certain limited Hollywood circles without his permission, Gawker crossed the journalistic line, first by requesting that a reader "leak" an infringing copy directly to Gawker, then second, after obtaining a link to and itself directly downloading an infringing PDF copy, and then third, by promoting itself to the public as the first source to download and read the entire Screenplay illegally and directing the public to do so.

3. After Gawker caused one of its readers to "leak" an infringing copy to Gawker, and obtained an infringing copy, Gawker posted an article with aheadline that boasts "*Here Is the Leaked Quentin Tarantino Hateful Eight Script*" – "**Here**," not someplace else, but "**Here**" on the Gawker website. The article then contains multiple direct links for downloading the entire Screenplay through a conveniently anonymous URL by simply clicking button-links on the Gawker page, and brazenly encourages Gawker visitors to obtain and read the Screenplay illegally

with the invitation to "**Enjoy!**" it. There was nothing newsworthy or journalistic about Gawker itself directly infringing copyright, nor facilitating, encouraging and directly inducing the public's violation of Plaintiff's copyright in the Screenplay, and it's conduct will not shield Gawker from liability for their unlawful activity.

4. Notwithstanding repeat demands for the removal of the posted URL links for direct downloading of the unlawfully posted script, including submissions of DMCA notices of copyright infringement, Gawker failed and expressly refused to remove their directions to and URL links to get the infringing materials. Gawker knowingly and actively acted as a promoter of copyright pirates, and, itself, did directly cause, induce, contribute to, enable and materially facilitate copyright infringement. The reason for the Copyright Act is to protect against the Gawker's conduct.

5. This is an action to obtain redress for Gawker's, and their co-conspirators', blatant violation of Tarantino's copyrighted work, among other calculated wrongful and tortious conduct.

## JURISDICTION & VENUE

6. This action is brought, and exclusive subject matter jurisdiction lies within this Court upon multiple grounds, including pursuant to the United States Copyright Act, 17 U.S.C. Sections 101 et seq., based on acts of copyright infringement committed in the United States (28 U.S.C. §§ 1331 and 1338(a)). This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a), and pursuant to 17 U.S.C. § 410(d) and § 411.

7. Venue lies within this District pursuant to 28 U.S.C. §1400, and is also proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because Defendants, and each of them, are subject to personal jurisdiction in this District as a substantial part of the events or omissions giving rise to the claims herein occurred in this District. This Court also has jurisdiction and venue of this action under 15 U.S.C. §1125 *et seq.*, 28 U.S.C. §§1331, 1338(a) and (b). Some of the key acts giving rise

1  to the claims asserted herein occurred in Los Angeles, California. The amount in controversy includes statutory damages for copyright infringement of up to $150,000 per violation, which Plaintiff sustained in the County of Los Angeles.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### THE PARTIES

8.  Plaintiff **Quentin Tarantino** ("Plaintiff" and/or "Tarantino") is, and at all times relevant hereto was, an individual residing in and who is engaged in and doing business in the County of Los Angeles, State of California. Tarantino is a multiple Oscar winning and nominated writer and director.

9.  Defendant **Gawker Media, LLC**, also know as (a/k/a) and doing business as (d/b/a) Gawker Media ("Gawker"), is, and at all times relevant hereto was, a limited liability company organized and operating under the laws of the State of Delaware, with its principal place of business in the State of New York, and who is engaged in and doing business and commercial activities in and causing a direct effect in the County of Los Angeles, State of California.

### PLAINTIFF'S REGISTERED COPYRIGHT

10.  Plaintiff Tarantino wrote a screenplay for a new ensemble western motion picture, titled *The Hateful Eight* (the "Screenplay"), that he would direct. Plaintiff previously filed for registration of copyright with the United States Copyright Office ("USCO") for the subject work, the Screenplay, as a "motion picture screenplay" literary textual work under the title "*The Hateful Eight*," pursuant to USCO Claim ID Number 1-JAFORJ, and Registration Number PAu 3-704-198. Said copyright registration application has been fully completed and was submitted, effective as of January 23, 2014 at 3:19:26 PM ET, including with full payment tendered of the service fee and deposit of the subject material -- all prior to the infringements set forth herein.

## BACKGROUND AND NATURE OF THIS ACTION

11.   On or about January 21, 2014, Plaintiff discovered that a copy of his Screenplay had, without his knowledge or authorization, been copied without his permission and leaked, albeit only in a limited manner within certain Hollywood circles (*i.e.*, online search engine searches for a copy of the script, through January 23, did not have any positive results, nor were there any publicly known or reported copies available).  After learning of the leak, Plaintiff decided to postpone working on the movie, and stated publicly -- in an interview that was widely reported in the media -- that he intended to publish it as a literary work.  Plaintiff routinely publishes his final versions of his screenplays for substantial advances and royalties.

12.   Seizing upon this information, Gawker — itself admittedly unable to lay hands on the confidential Screenplay, which was at that point not publicly available anywhere on the Internet nor outside of certain very limited Hollywood circles — publicly solicited its purported 47 million monthly United States readers to infringe Tarantino's copyright, asking and inducing anyone to leak and provide Gawker with an unauthorized infringing copy of the Screenplay.  Specifically, on January 22, 2014 at 10:37 AM ET, Gawker posted an article on the "Defamer" section of its Gawker Website -- at <http://defamer.gawker.com/quentin-tarantino-throws-temper-tantrum-after-script-le-1506541036> (Gawker's "January 22nd Article") -- about the leaked script and about Plaintiff's public statements on the matter.  In Gawker's January 22nd Article, Gawker actively solicited and induced its readers to infringe Tarantino's copyright, and to provide it with an unauthorized infringing copy of the Screenplay, stating **"if anyone would like to … leak the script to us, please do so at [gawker email address]**."

13.   Gawker's solicitation and direct inducement for copyright infringement worked, as, by the next day, Gawker itself obtained a PDF of the Screenplay and a theretofore publicly unknown universal resource locator ("URL") link to an anonymous file storage and download site that had stored for download an infringing

1 unauthorized full PDF copy of the complete copyright registered Screenplay. The
2 PDF of the Screenplay was uploaded, for storage and download availability, on the
3 obscure file storage website AnonFiles.com ("AnonFiles Website") page, at the url
4 <https://anonfiles.com/file/ba77fe6f664d451a4725fbcca0846f67> (the "Screenplay
5 Download URL").

6     14.    The AnonFiles Website, operated by a person currently referred to as
7 DOE-1, is a file storage site that allows a user to upload an individual file to the
8 storage site, and, upon uploading the file, receive a secret private URL at which the
9 user can later retrieve and download the file and/or share the URL link to allow
10 another person to download the file via a "download" button on the page at the
11 particular secret private URL. The AnonFiles Website is not a searchable site nor
12 do any files nor any pages have tags, terms or content locateable by the public,
13 whereby, upon uploading a file, if the uploader does not document/save a copy of
14 his/her secret private auto-generated URL, the file can never again be located and
15 retrieved, whether via the site or any search engine.

16     15.    An unidentified direct copyright infringer, referred to as Doe-
17 FileUploader 2, uploaded an unauthorized full copy of the Screenplay to the
18 AnonFiles Website. The copying of, use, reproduction, distribution, display,
19 transmission and/or dissemination of copies of the Screenplay and any physical
20 embodiment thereof, uploaded to the AnonFiles Website, is unauthorized, and
21 constitutes an infringement of Plaintiff's rights, including of the Screenplay
22 copyright, and violation of copyright law. The AnonFiles Website and its user
23 involved in the upload of the Screenplay to the AnonFiles Website have infringed
24 Plaintiff's exclusive copyright in and to the Screenplay directly and indirectly by
25 use, reproduction, display, transmission and/or dissemination of the copyrighted
26 work, causing the copyrighted work to be copied and distributed, all without the
27 consent of Plaintiff.
28 / / /

16.     The copy of the Screenplay was stored on AnonFiles.com only in the popular portable document format ("PDF") file format, and then only available pursuant to a file "download" button, which by its very nature cannot simply be viewed on a computer's screen without first being completely downloaded through the Internet to an individual's computer.  Anyone who sought to read or obtain the Screenplay from the Screenplay Download URL necessarily had to first download a PDF copy of the work onto their own computer.

17.     On January 23, 2014, after Gawker obtained the Screenplay Download URL in response to its request for leak of an unauthorized infringing copy of the Screenplay, <u>Gawker itself illegally downloaded to its computers an unauthorized infringing PDF copy of the Screenplay</u> -- read it and learned that the PDF download document was 146 pages -- directly infringing Tarantino's copyright.

18.     Immediately thereafter, on January 23, 2014 at 4:50 PM ET, with full knowledge that the Screenplay Download URL was to an unauthorized PDF copy of Tarantino's unreleased copyrighted script, Gawker  fabricated a "story" that the script had been made *publicly* available online so that Gawker could then trumpet to the world and begin promoting itself as the very first source for the public to be able to obtain the entire Screenplay.  Gawker posted an article on its Gawker Website -- at <http://defamer.gawker.com/here-are-plot-details-from-quentin-tarantinos-leaked-1507675261> (Gawker's "January 23rd Article") -- with direct URL click-through links for the transmission and downloading of the complete Screenplay at the Screenplay Download URL.  In its January 23rd Article, titled **"*Here Is the Leaked Quentin Tarantino Hateful Eight Script*"**, Gawker posted an otherwise private in-line hyperlink to the obscure private file hosting website AnonFiles.com, where an illegal PDF pirated copy of the Screenplay was otherwise privately stored.

/ / /

/ / /

19. In its January 23rd Article, Gawker specifically encouraged its readers to download the PDF "document" and then read the Screenplay illegally, with the invitation that the "document is 146 pages of pure Tarantino. Enjoy!," with the text "146 pages" also a link to the downloadable PDF copy of the Screenplay on AnonFiles.com. In its January 23rd Article, Gawker expressly and specifically directed, encouraged and solicited its "47,000,000 Monthly US Readers" and the general public with click-through URL links on where and how (*i.e.*, "Here") to obtain an unauthorized downloadable PDF copy of the unreleased Screenplay on AnonFiles.com, by which they intended to and did directly cause, contribute to, enable, facilitate, aid, abet, induce and/or participate in the direct infringement of Plaintiff's copyrighted work, thereby propagating such unauthorized download and infringement of Plaintiff's work by both AnonFiles and various third-party Internet users.

20. Between January 23, 2014 and January 26, 2014, and based on and as a direct result of Gawker's January 23rd Article and their following the Gawker's click-through URL links to the Screenplay on the AnonFiles Website, specific third-party infringers, including but not limited to persons identified and referred to herein as Doe-Downloader(s) 3 through 6, did each download a copy of the unauthorized PDF of the Screenplay from the AnonFiles Website to their computers. Gawker caused, induced and materially contributed to the infringement of Tarantino's Screenplay by the subsequent third-party Doe-Downloaders 3-6.

21. Doe-Downloaders 3-6, and the general public and other third-party infringers, would not have known about or found the complete PDF downloadable copy of the Screenplay on the AnonFiles Website if not for Gawker's January 23rd Article post with specific click-through URL links to the Screenplay. Until publication of Gawker's article, online search engine searches for the Screenplay did not yield any positive results for any copy of the Screenplay. Gawker's article linked to the first (and otherwise unknown) incidence of the complete Screenplay

1 being posted online or otherwise publicly available. Gawker's article and links became the source for wide-spread of the otherwise limited leak within certain Hollywood circles, as it was then widely commented upon and referred to by various other media outlets and downloaded by Gawker's readers.

22. On January 23 and 25, 2014, Plaintiff's authorized agent submitted a "Digital Millennium Copyright Act ("DMCA") Notice of Infringement" to the operators of the AnonFiles Website (the "AnonFiles DMCA Notice"). Pursuant to the AnonFiles DMCA Notice, Plaintiff's authorized agent made demand that the operators of the AnonFiles Website immediately remove from its website/systems the unauthorized PDF downloadable copy of the Screenplay and/or any links that allows for access to the transmission and/or downloading of the Screenplay. AnonFiles failed to expeditiously comply with the AnonFiles DMCA Notice. And then, even after the initial Screenplay pdf file was eventually disabled, a replacement pdf file copy was posted and made available for view and download at the same AnonFiles Website Screenplay Download URL. On or about January 26, 2014, the ScreenPlay file at the dedicated AnonFiles Website Screenplay Download URL was disabled.

23. On January 26, 2014, as the download URL link to the Screenplay in Gawker's January 23rd Article temporarily no longer led to an available dowloadable copy of the Screenplay, Gawker was faced with no longer being able to promote itself and drive traffic to its site as the source for the public to be able to get the Screenplay "Here," So Gawker updated its January 23rd Article in order to continue to directly contribute to the further infringement of Tarantino's copyright. On January 26, 2014, after a Gawker reader and third-party infringer had downloaded a copy of the Screenplay which originated from the AnonFiles Screenplay Download URL (prior to the page being disabled) and thereafter uploaded a PDF copy to the website Scribd.com, Gawker amended and updated its January 23rd Article, writing: "the script has been made public online here and

1  here," to add the text "and here" into its article — with the subsequent text "here"
2  an additional new URL click-through link directly to a subsequent replacement
3  available copy of the complete Screenplay, hosted on the website Scribd.com.

4      24.  On January 26, 2014, based on and as a direct result of Gawker's
5  updated (on January 26th) January 23rd Article and the following of the Gawker's
6  click-through URL link to the Screenplay, specific third-parties, including but not
7  limited to a specific person identified and referred to herein as Doe-Downloader 7
8  who at or about 9:18 pm, did download a copy of the unauthorized PDF of the
9  Screenplay from the Scribd.com Website to his computer.  Gawker caused, induced
10 and materially contributed to the infringement of Tarantino's Screenplay by the Doe-
11 Downloader 7, and other persons, download of the Screenplay.

12     25.  Notwithstanding repeated demands for the removal of the posted direct
13 URL links to downloadable copies of the unlawfully posted infringing materials,
14 including submissions to Gawker and to AnonFiles of DMCA notices of copyright
15 infringement, (i) AnonFiles failed to expeditiously disable access to and/or remove
16 the posted infringing materials, and then, even after the initial downloadable
17 Screenplay PDF file was eventually removed, soon thereafter a subsequent pdf file
18 copy was posted and made available for download at the exact same AnonFiles
19 Website Screenplay Download URL, and (ii) Gawker likewise failed and expressly
20 refused to remove its directions to and links to the initial downloadable infringing
21 Screenplay on AnonFiles and, thereafter, subsequent downloadable infringing
22 Screenplay on Scribd.com.

23

24                         **FIRST CLAIM FOR RELIEF**
25 **Direct and Contributory Copyright Infringement [17 U.S.C. § 101 *et. seq*.]**
26                     **(Against Defendant GAWKER MEDIA, LLC)**
27     26.  Plaintiff repeats, realleges and incorporates each and every allegation
28 contained in Paragraphs 1 through 25, inclusive, as though fully set forth herein.

27. Plaintiff is the sole exclusive owner of all right, title and interest in the work and copyright to the Screenplay, and the physical embodiment(s) thereof. The subject work of this claim has been properly and fully submitted in Plaintiff's name to the U.S. Copyright Office ("USCO") for copyright registration, prior to the infringement alleged herein.

28. On January 23, 2014, after Gawker obtained the Screenplay Download URL in response to its request for leak of an unauthorized infringing copy of the Screenplay, Gawker itself illegally downloaded to its computers an unauthorized infringing PDF copy of the Screenplay.

29. Gawker's conduct constitutes a direct copyright infringement of Plaintiff's rights and copyright. Gawker has infringed Plaintiff's exclusive copyright in and to the Screenplay by itself downloading from the AnonFiles Website to one or more of its computers an unauthorized infringing PDF copy of the Screenplay. Gawker then utilized the unauthorized infringing PDF copy of the Screenplay to disseminate portions of and/or content from the unpublished work. Accordingly, Gawker is liable to Tarantino for direct copyright infringement.

30. On or about January 23, 2014 at 4:50 PM ET -- after the unauthorized infringing PDF copy of the Screenplay was uploaded and posted on the obscure file upload website AnonFiles.com ("AnonFiles Website") -- Defendant Gawker posted its January 23rd Article on their Gawker Website titled "*Here Is the Leaked Quentin Tarantino Hateful Eight Script*". In the January 23rd Article, Gawker wrote about how an upset Quentin Tarantino was "betrayed" by someone who copied and leaked the Screenplay for Tarantino's "latest film, The Hateful Eight." Gawker's writer also wrote: (i) "Since [Gawker] first posted this item, a document that appears to be the **script has been made public online *here***" -- with the text "here" a URL click-through link directly to the posted downloadable PDF copy of the complete Screenplay at the Screenplay Download URL page; and (ii) "For better or worse, the **document is *146 pages* of pure Tarantino. Enjoy!**" -- with the text

1  "146 pages" also a URL click-through link directly to the posted downloadable copy of the complete Screenplay at the Screenplay Download URL page, first with the initial downloadable infringing Screenplay and also the subsequent downloadable infringing Screenplay.

5  31. On January 26th, Gawker amended and updated its January 23rd Article, writing "… the script has been made public online *here and here*", to add the text "and here" into its article -- with the subsequent text "here" an additional URL click-through link directly to another posted downloadable copy of the complete Screenplay, posted on the website scribd.com.

10  32. Gawker, through its article and specific URL click-through links therein, directed the general public on where and how to obtain and download an otherwise unknown unauthorized copyright infringing PDF copy of the unreleased Screenplay. Between January 23, 2014 and January 26, 2014, and based on and as a direct result of Gawker's January 23rd Article and their following the Gawker's click-through URL links to the Screenplay, specific third-party infringers, including but not limited to persons referred to herein as Doe-Downloader(s) 3 through 6, did each download the unauthorized PDF of the Screenplay. On January 26, 2014, based on and as a direct result of Gawker's updated (on January 26th) January 23rd Article and the following of the Gawker's click-through URL link to the Screenplay, specific third-parties, including but not limited to a specific person referred to herein as Doe-Downloader 7, did download the unauthorized PDF of the Screenplay. Gawker intended to and did directly cause, contribute to, enable, facilitate, aid, abet, induce and/or participate in the dissemination of and infringement of Plaintiff's copyrighted work. Gawker, with knowledge of the infringing activity, induced, solicited, encouraged, caused or materially contributed to the infringing conduct of (i) DOE-1 a/k/a AnonFiles.com, (ii) Doe-Uploader 2, and (iii) Doe-Downloaders 3-7.

28  / / /

33. Gawker's conduct constitutes a contributory copyright infringement of Plaintiff's rights and copyright. Gawker infringed Plaintiff's exclusive copyright in and to the Screenplay by knowingly facilitating and directly contributing to the transmission and/or dissemination of unauthorized copies of the copyrighted work, and causing the copyrighted work to be copied and distributed worldwide, all without the consent of Plaintiff. Accordingly, Gawker is liable to Tarantino for contributory copyright infringement.

34. On January 23, 2014 (and again on January 24, 2014), Plaintiff's authorized agent submitted a "Digital Millennium Copyright Act ("DMCA") Notice of Infringement" to the operators of the Gawker Website (the "Gawker DMCA Notice"), providing notice that links to access to the infringing copy of the Screenplay appears at the URL locations on their website as set forth in the Gawker DMCA Notice. Pursuant to the Gawker DMCA Notice, Plaintiff's authorized agent made demand that Gawker immediately remove from its website the URL links to the unauthorized posting of the Screenplay and/or any links that allows for access to the transmission and/or downloading of the Screenplay. Plaintiff's authorized agent further made demand that Gawker cease and desist from directly or indirectly using their website to cause, contribute to, enable, facilitate, aid, abet, induce and/or participate in the infringement of Plaintiff's copyrighted work, as identified in Gawker DMCA Notice. Gawker failed and expressly refused to comply with the Gawker DMCA Notice, and expressly refused to remove from its website the direct URL links to the AnonFiles Website file storage page with the unauthorized solely downloadable PDF of the Screenplay. Thereafter, on or about January 26th, Gawker amended and updated its January 23rd Article to add into it an additional URL click-through link directly to another and newly posted downloadable copy of the complete Screenplay, on Scribd.com.

35. As a direct and proximate result of Gawker's infringing activities, Plaintiff has sustained and will continue to sustain further substantial injury,

including damage to his business and profession and loss of value of the Screenplay, in an amount not yet known but to be determined according to proof at trial.

36. Plaintiff lacks an adequate remedy at law.

37. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to an order enjoining Defendants' from infringing Plaintiff's copyright; pursuant to 17 U.S.C. § 503, Plaintiff is entitled to recover statutory or actual damages, at his election at the time of trial, from Defendants' infringement and Defendants' profits attributable to their infringing conduct.  Pursuant to 17 U.S.C. § 505, Plaintiff is also entitled to recover the full costs of bringing this action and his reasonable attorneys' fees.

38. Plaintiff has suffered irreparable harm, and will continue to suffer additional irreparable harm until and unless Defendants' infringement is enjoined by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant(s), as follows:

**AS TO THE FIRST CLAIM FOR RELIEF (FOR DIRECT AND CONTRIBUTORY VIOLATION OF COPYRIGHT)**:

1. For actual damages and Defendants' profits in an amount exceeding $1,000,000 to be determined at trial;

2. For statutory damages in an amount at the discretion of the Court;

3. For a preliminary injunction and a permanent injunction enjoining Defendants, and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from continuing to reproduce, distribute, display, disseminate, transmit, make available for download or otherwise use the Screenplay in any manner whatsoever appropriating or in violation of Plaintiff's copyright;

4. Attorneys' fees and costs, pursuant to 17 U.S.C. §§502-505;

**AS TO ALL CAUSES OF ACTION:**

5. For costs of suit herein;

6. For reimbursement to Plaintiff of attorneys' fees, as provided by law;

7. For interest on the above-requested damages and at the maximum legal rate as provided by law; and

8. For such other additional relief as the Court deems just and proper.

Respectfully submitted,

DATED: April 30, 2014

MARTIN D. SINGER
EVAN N. SPIEGEL
HENRY L. SELF, III
LAVELY & SINGER
PROFESSIONAL CORPORATION

By: /s/ - Martin D. Singer
_____
MARTIN D. SINGER
Attorneys for Plaintiff Quentin Tarantino

**REQUEST FOR JURY TRIAL**

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

DATED: April 30, 2014

MARTIN D. SINGER
EVAN N. SPIEGEL
HENRY L. SELF, III
LAVELY & SINGER
PROFESSIONAL CORPORATION

By: /s/ - Martin D. Singer
_____
MARTIN D. SINGER
Attorneys for Plaintiff Quentin Tarantino